585 So.2d 1268 (1991)
W.K. JOURNEY and Beulah Journey Evans, d/b/a Delta Drilling Company
v.
Tommy LONG, Individually; Sammy Long, Individually; Trinity Long and Drew Long, Minors, By and Through Their Natural Parents, Tommy and Sammy Long.
No. 90-CA-0376.
Supreme Court of Mississippi.
September 4, 1991.
Dissenting Opinion September 25, 1991.
Caroline R. Moore, Eupora, for appellant.
Gina Lynn Bardwell, Gregory A. Maddox, Abraham & Rideout, Greenwood, for appellee.
Before ROY NOBLE LEE, C.J., and SULLIVAN and BANKS, JJ.
Dissenting Opinion of Justice McRae September 25, 1991.
BANKS, Justice, for the Court:

I
Here we are presented with a default judgment in a personal injury action wherein no evidence supportive of the determination of damages appears of record. For that reason, we reverse.

II
On May 2, 1988, Plaintiffs Tommy and Sammy Long, on behalf of themselves and their two children, ("Longs") filed a complaint alleging negligence on the part of the defendants, W.K. Journey and Beulah Journey Evans, doing business as Delta Drilling Company[1]. Specifically, the complaint charged that defendants had negligently maintained the water system, allowing the water to become contaminated, and that, as a result of this contamination, the plaintiffs became sick with salmonella. They requested actual damages in the amount of $315,926.25, and $400,000.00 in punitive damages. No answer was filed, and an application for entry of default, with the supporting affidavit of plaintiff's attorney, was filed on August 26, 1988. Counsel certified that the notice of application for entry of default was served by mail on Wendy Evinger, attorney for defendants. No response was filed.
On September 12, 1988, the deputy clerk entered default against the defendants. *1270 On March 21, 1989, the court entered a judgment in favor of the individual plaintiffs totaling $25,000.00.[2] Additionally, the court awarded attorneys' fees in a sum equal to 33 and 1/3% of the amount awarded each plaintiff and provided that the plaintiffs be awarded punitive damages in an amount to be determined at a later date. The record does not reflect the filing of a motion for default judgment or that a hearing date was set. Defendants were not notified of the hearing. The record does not reflect that the case was ever set for trial. Most importantly, there is no record of a hearing.
On August 11, 1989, after they were summoned to an examination of judgment debtors, defendants filed a "Motion to Set Aside Default Judgment and Motion for Continuance" alleging that they had, in fact, filed a timely answer and requesting a continuance of the August 15 date for examination. The record does not reflect a response to or ruling on any part of this motion.
Defendants next filed an "Amended Motion to Set Aside Default Judgment" on February 27, 1990, and a notice of hearing on the motion for March 5. In the amended motion they added arguments that defendant Journey was not in fact an owner of Delta Drilling, was not a proper party to the action and that they had made an appearance and were therefore entitled to notice of a motion for default judgment and received none. Plaintiffs responded to the latter motion on March 5, 1990. In support of their response, plaintiffs attached two affidavits  one from an attorney who represented them and the other from the circuit clerk. Both affidavits stated that no answer was filed or received by either affiant.
On March 5, 1990, a hearing was held. Two witnesses, Wendy Evinger and defendant Beulah Evans, testified. Evinger established that she had negotiations with counsel for the plaintiffs over the dispute in question before the suit was filed and she testified without contradiction that she had talked with counsel after suit was filed concerning his allowing a few extra days in which to file an answer. She stated that permission was granted but that she did not need the extra time because she was able to complete her answer and bring it to the courthouse for filing within thirty days of service of the complaint.
Evinger indicated that she arrived at the courthouse, accompanied by Beulah Evans, after working hours and slid defendants answer under the door of the circuit clerk's office. She testified that she did not receive the notice of application for default. The address to which it was allegedly mailed was the address of an attorney through whom Evinger received mail at one time. She had no explanation for her failure to receive this notice, if it was in fact delivered to the address indicated.
Evans corroborated Evinger's testimony concerning sliding an envelope under the door. She stated that she actually saw an answer on behalf of her father, defendant Journey. She did not see the answer on her own behalf. Nor did she see the contents of the envelope but she was led to believe by Evinger that the envelope contained the answers for both. Mrs. Evans also testified that her father owned no interest in Delta Drilling at the time of the incident in question and that there were other sources from which the salmonella could have come.
In closing argument, defendants urged the court to set aside the default and the judgment based on excusable neglect and the showing of a meritorious defense. They also noted the absence of "a request for a Writ of Inquiry, or a Writ of Inquiry submitted to the Court" and argued that because damages were unliquidated they had to be "proven and in a defendable amount."
At this point the court ruled, stating that it had

*1271 "independent knowledge of its own that a Writ of Inquiry was conducted, testimony was taken, and the Court made considerable inquiry into the injuries of these people and their doctor's statements, etc., and felt that the amount of the damages awarded by the court were justified under the facts as I had them at that time, and I do not believe punitive damages were awarded. That was taken under advisement by the Court, to be determined at a later date, in that the Court had no knowledge of the defendants, and the motion will be overruled, denied."
Defendants filed notice appeal on April 4, 1990. A separate written order denying the motion which indicated that it was signed on April 5, 1990, was filed on April 6, 1990. This order merely recited that the motion to set aside default judgment had been heard and that the court was of the opinion that it should be denied. No findings were added with respect to excusable neglect or meritorious defense. On May 25, 1990, defendants filed a "Motion to Set Aside Void Judgment" urging the court to vacate the default judgment pursuant to Rule 60(b)(4) because there was no written application for judgment nor a hearing to determine damages as prescribed by Rules 55(b) and 40 Miss. Rules of Civil Procedure. The record does not reflect a disposition of this motion.

III
The only issue presented to this court in appellant's brief is whether the judgment may stand in the absence of record evidence supporting damages[3]. Appellees argue that this issue was not raised in the trial court and that appellants are thus barred from raising it here.
Although it is true that defendants did not assign the absence of a writ of inquiry or hearing to assess damages as a ground for its motion to set aside in either its original written motion or its amended motion, they did raise that issue clearly at the hearing on the motion.[4] There was no objection and the trial court made findings and a ruling as to this issue. Under these circumstances we will consider the issue to be properly before us.
Miss.R.Civ.P. 55 provides in parts relevant here
(a) Entry. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default.
(b) Judgment. In all cases the party entitled to a judgment by default shall apply to the court therefor. If the party against whom judgment by default is sought has appeared in the action, he (or if appearing by representative, his representative) shall be served with written notice of the application for judgment at least three days prior to the hearing of such application; however, judgment by default may be entered by the court on the day the case is set for trial without such three days' notice. If in order to enable the court to enter judgment or to carry it into effect it is necessary to take an account or to determine the amount of *1272 damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearing with or without a jury, in the court's discretion, or order such references as it deems necessary and proper.
Thus, prior to securing a default judgment pursuant to Rule 55(b), there must be an entry of default. Wright, Miller & Kane Federal Practice and Procedure: Civil § 2682 p. 406, Official Comment to Miss. R.Civ.P. 55, p. 132 (1990). A default may be entered against any party who neglects to plead or otherwise defend. Id.
In the case at bar, as defendants never filed an answer or other response, default was properly entered by the clerk on September 12, 1988. Rule 55(b) provides that after a default has been entered, a party entitled to such judgment must apply to the court therefor. Although it contemplates that a judgment may be entered by the court upon application it further provides that where damages are left to be determined by evidence the court may conduct a hearing with or without a jury.
If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. Testimony need not be presented to obtain judgment by default. United States v. Borchers, 163 F.2d 347 (2d Cir.1947). See also, S.E.C. v. First Financial Group of Texas, Inc., 659 F.2d 660 (5th Cir.1981) (Rule 55(b) does not require the district court to hold either an evidentiary hearing or oral argument on a motion for a default judgment.)
Because plaintiffs' claims were not for liquidated damages, a hearing was required. Brinton v. Gaffney, 554 F. Supp. 388 (E.D.Penn. 1983). See also, Collex, Inc. v. Walsh, 74 F.R.D. 443 (E.D.Penn. 1977). ("[I]t is clear that a judgment may not be entered by default without a hearing, unless the amount claimed is a liquidated amount or an amount capable of mathematical calculation.") Id. (emphasis in original, other citations omitted). Where a hearing is required, that hearing should be of record. See, Feazell v. Staltzfus, 98 Miss. 886, 54 So. 444 (1911). The testimony referred to by the trial court is not in the record before us. In fact, there is no record of an application for default judgment. Plaintiffs may not rely on that which is not in the record. See, Rich By and Through Brown v. Nevels, 578 So.2d 609 (Miss. 1991) ("[D]amages awards must be supported by evidence, and such evidence must be reflected in the record if it is to be affirmed on appeal.") Id. at 617.
Plaintiffs failed to comply with the provisions of Rule 55(b) as set forth above. We, therefore, must vacate the judgment entered herein and remand this matter to the circuit court for further proceedings[5].
*1273 JUDGMENT VACATED AND REMANDED FOR FURTHER PROCEEDINGS.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN and PITTMAN, JJ., concur.
McRAE, J., dissents, opinion to follow.
McRAE, Justice, dissenting:
Plaintiffs obtained a valid default judgment, and the trial court, in its discretion, chose not to set it aside. Following the judgment and a hearing on the issue of damages, the trial court granted a recovery to Plaintiffs. Finding no reversible error in these proceedings, I respectfully dissent.
Appellants do not contest or assign as error the default judgment. Absent plain error, therefore, this Court should not even address the propriety of the judgment. We have stated in a litany of cases that when an appellant fails to raise an issue or to assign it as error, this Court will not review the matter unless plain error occurred in the lower court proceedings. See Read v. Southern Pine Elec. Power Ass'n, 515 So.2d 916, 921 (Miss. 1987) (omission of issue from assignment of errors "precludes argument of it unless we consider it, at our option, as plain error"); Adams v. Green, 474 So.2d 577, 584 (Miss. 1985) (unassigned error may not be argued absent plain error); Browning v. Shackelford, 196 So.2d 365, 373 (Miss. 1967) (Court not permitted "to adopt a neo-advisory position and suggest to litigants other potential offenses or defenses"); Harvard v. Board of Supervisors, 220 Miss. 359, 362, 70 So.2d 875, 876 (1954) (reviewing court cannot reverse for error which is unassigned).[1] Only one week ago in Smith v. Dorsey, No. 07-CA-59273 slip op. at 3-4, ___ So.2d ___, ___ (Miss. Sept. 4, 1991), this Court declined to assess on the merits certain alleged errors that the Smith appellants failed to discuss in their brief. For other cases supporting proposition that failure to properly brief an issue can act as a procedural bar, see R.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1023 (Miss. 1990); Brown v. State, 534 So.2d 1019, 1023 (Miss. 1988); Shive v. State, 507 So.2d 898 (Miss. 1987); Devereaux v. Devereaux, 493 So.2d 1310 (Miss. 1986); Pate v. State, 419 So.2d 1324 (Miss. 1982).
Presumably relying on the plain error doctrine, the majority vacates Plaintiffs' default judgment on grounds that Plaintiffs' Motion for Default Judgment does not appear in the record. However, MRCP 55(b) merely requires that "the party entitled to a judgment by default shall apply to the court therefor." No one suggests that Plaintiffs failed to make such an application. The record itself establishes that Plaintiffs followed the requirements of Rule 55(b): The court's order entering the default judgment stated:
[t]his action came on for hearing on the Motion of the plaintiffs for a Default Judgment pursuant to Rule 55(b) ... and the Court having heard and considered said Motion and being fully advised in the premises, finds that said Motion is well taken and should be sustained.
Nowhere is it required that the text of the application for default judgment must appear in the record in order for the resulting *1274 judgment to be effective. Of course, if the record were silent as to whether Plaintiffs ever applied for the judgment, then this Court would necessarily presume that no such application existed. See Willenbrock v. Brown, 239 So.2d 922, 925 (Miss. 1970) (Court will not consider anything on appeal that does not appear in record). However, the Court cannot profess blindness to that which appears before it in black and white. The record clearly indicates that Plaintiffs moved for the entry of default judgment as required by MRCP 55(b). How the majority can say that "there is no record of an application for default judgment" escapes me. The error of the lower court, if any, is far from "plain."[2]
The majority also concludes that Plaintiffs' damage award cannot stand since the record contains no transcript of the testimony on which the court based its findings. To support its requirement that testimony from the hearing must appear in the record, the majority resorts to the crumbling pages of Feazell v. Soltzfus, a 1911 case which involved a hearing on the issue of whether to dismiss an action commenced under poverty affidavit pursuant to the Code of 1906. Feazell was good law in its day, but we are now interpreting the Mississippi Rules of Civil Procedure, not the Code of 1906. MRCP 55 does not require the memorialization of hearing testimony. Furthermore, this Court in the more recent case of Fontaine v. Pickle, 254 So.2d 769 (Miss. 1971) found not only that a transcript of evidence is not required, but also that the Supreme Court must affirm in the absence of a transcript.[3]Id. at 769-70; accord Queen v. Queen, 551 So.2d 197, 199 (Miss. 1989) ("[e]stablished law of appeal and error requires that we presume ... evidence legally adequate" to support decree in absence of transcript); Moawad v. State, 531 So.2d 632, 635 (Miss. 1988) ("In absence of anything in the record appearing to the contrary, this Court presumes that the trial court acted properly."); Vinson v. Johnson, 493 So.2d 947, 949 (Miss. 1986) ("In absence of anything in the record appearing to the contrary, this Court will presume the trial court acted properly, and if evidence was necessary, that court heard sufficient evidence to support the judgment."); Harvey v. Dunaway Bros., 232 Miss. 89, 100, 98 So.2d 143, 147-48 (1957) ("A transcript of the testimony and evidence introduced on the hearing of the cause on its merits was not preserved. We as a reviewing Court must, therefore, presume in the absence of a transcript of the evidence that the evidence was sufficient to support the final decree.") (citing numerous cases).
If the record indicated that the lower court had imposed a damage award without the benefit of a hearing, then this award, being one for unliquidated damages, could not stand. See Wade v. Wade, 419 So.2d 584, 585 (Miss. 1982) (Court reversed in absence of transcript where record affirmatively revealed failure on part of trial court to hold hearing on matter requiring proof). The record before us, however, clearly establishes that a hearing was held. Although the precise contents of the hearing do not appear, the trial court stated unequivocably:
[T]his Court has independent knowledge of its own that a Writ of Inquiry was conducted, testimony was taken, and the Court made considerable inquiry into the *1275 injuries of these people and their doctor's statements, etc., and felt that the amount of the damages awarded by the court were justified under the facts as I had them at that time.
By reversing on grounds that no transcript was taken of hearing testimony, the majority totally ignores Fontaine's determination that "in the absence of a transcript of the evidence, the rule is well settled that we, as a reviewing court, must presume that the evidence was sufficient to support the final decree." Fontaine, 254 So.2d at 769.
For the foregoing reasons, I must respectfully dissent.
NOTES
[1] The parties will be referred to by their designation in the lower court.
[2] The break-down of actual damages awarded was as follows:

1. Sammy Long, $10,000.00.
2. Drew Long, minor, $10,000.00.
3. Tommy Long, $2,500.00.
4. Trinity Long, $2,500.00.
[3] Defendants do not contend that the court erred in failing to set aside the default. The trial court made no findings on this issue but defendants apparently accept its implicit determination that no excusable neglect was demonstrated.
[4] Defendants use an outmoded term under our rules. Defendants failure to use terminology appropriate to current civil procedure is not fatal to their appeal for the Court often considers the artfully drafted, as well as the not-so-artfully-drafted complaint. As we noted in Dungan v. Dick Moore, Inc., 463 So.2d 1094, 1097-98 n. 2 (Miss. 1985).

[a]lthough technically there has been no such thing in Mississippi as a writ of inquiry since January 1, 1982, here as elsewhere we will overlook errors in nomenclature and concern ourselves with the substance of the matter. Where under prior practice the procedure of a writ of inquiry would have been appropriate, parties may now obtain the relief formally obtainable by filing motions or commencing actions seeking such relief. We will treat the motion for writ of inquiry ... as though it were a motion for assessment of damages... .
Id.
[5] Because it was not raised, we do not reach the question whether defendants made an "appearance" sufficient to be entitled to notice of any hearing on application for default judgment. No cases in Mississippi have addressed this issue. Thus, we would analyze decisions from courts of the United States construing and interpreting Rule 55(b) of the Federal Rules of Civil Procedure which contains provisions essentially identical with our state rules. Bryant, Inc. v. Walters, 493 So.2d 933, 935-36 (Miss. 1986).

Traditionally, for an action to constitute an appearance, one had to file documents in or actually physically appear before a court. Trust Co. Bank v. Tingen-Millford Drapery Co., 119 F.R.D. 21, 22 (E.D.N.C. 1987). Today, however, those requirements have been relaxed considerably for Rule 55 purposes. "Courts now look beyond the presence or absence of such formal actions...." Lutomski v. Panther Valley Coin Exchange, 653 F.2d 270, 271 (6th Cir.1981). The appearance commanded by Rule 55(b) has been defined broadly and interpreted liberally and is not limited to formal court appearance. Heleasco Seventeen, Inc. v. Drake, 102 F.R.D. 909, 912 (D.Del. 1984) quoting H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689 (D.C. Cir.1970). Indeed, several cases have held that informal contacts between parties may constitute an appearance. See, e.g. H.F. Livermore Corp., 432 F.2d 689 (D.C. Cir.1970) (defendant found to appear in action where the court was informed that during the settlement negotiations, letters, in which the defendant made clear its intention to defend suit, were exchanged between the attorneys for the parties); Hutton v. Fischer, 359 F.2d 913 (3d Cir.1966) (court found that telephone call from defendant's counsel for more time, sufficient to meet the appearance standard of Rule 55(b)(2)); United States v. One 1966 Chevrolet Pickup Truck, 56 F.R.D. 459 (E.D.Tex. 1972) (court held that the defense attorney's filing with the I.R.S. of a claim to the property forfeited and a court bond to transfer jurisdiction was sufficient notice of claimant's clear purpose to defend and sufficient to constitute appearance); Heleasco Seventeen, Inc., 102 F.R.D. 909 (D.Del. 1984) (defendants made appearance where their attorney initiated telephone conversations with plaintiff's attorney and defendants' attorney conveyed to plaintiff's attorney problems defendants were having due to the complexity of the case); Trust Co. Bank, 119 F.R.D. 21 (E.D.N.C.) (telephone conversations between defendant's attorney and plaintiff's attorney inquiring as to date on which answer had been filed constituted an appearance by implication).
It is clear that defendants have now made an appearance by any standard and they are therefore entitled to notice and to be heard on any motion to assess damages on remand.
[1] Assignment of error serves the same function at the appellate level as does a complaint at the trial level; i.e., it gives the other party notice of the bases upon which the assigning party seeks relief. 5 Am.Jur.2d Appeal and Error § 648 (1962); 5 C.J.S. Appeal & Error § 1217 (1958). To address error that has not been assigned deprives the opposing party of an opportunity to prepare a response.
[2] Had the majority not found the motion issue depositive, it may have addressed the issue of whether Defendants made an "appearance" entitling them to notice. Consequently, I feel compelled to observe that Defendants apparently made no contact with either the court or their opponents subsequent to the filing of the complaint. Defendants' attorney allegedly had "one or two brief discussions" with Plaintiffs' attorney prior to the filing of the complaint (R. II at 4), but this could not possibly constitute an "appearance" since, at that time, there was not yet a suit to appear in.
[3] The Court in Fontaine had no transcript before it because the court reporter's notes had been stricken by a previous order of this Court. Fontaine, 254 So.2d at 769. The reason for the transcript's absence, however, is irrelevant for our purposes. Regardless of whether a transcript is striken, burned, eaten by the proverbial dog, or never made in the first instance, the bottom line is that the appellate court does not have access to a transcript.